Peter C. Gamache, Esq.
Law office of Peter C. Gamache
405 W. 36th Avenue, Suite 201
Anchorage, Alaska 99503
(907) 563-6969
FAX (907) 563-5083
Email: peter_gamache@yahoo.com
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TERRY M. STAHLMAN, and ) <br> THE STAHLMAN ARMS BIG TIMBER ) <br> SUITS AND APARTMENTS, LLC ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> THE MUNICIPALITY OF ANCHORAGE, ) <br> RE/MAX OF ALASKA, INC., and ) <br> RANDY D. COMER, individually, ) <br> ) <br> Defendants. ) <br> ) | Case No. 3:05-cv-00298-TMB |

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

**BY DEFENDANT MUNICIPALITY OF ANCHORAGE**

The plaintiffs, by and through counsel, oppose the motion to dismiss by defendant Municipality of Anchorage. When the allegations in the complaint are viewed in the light most favorable to plaintiff, they meet the Civil Rule 8(a) (2) requirement of "a

OPPOSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                 Page 1 of 12

Law Office of Peter C. Gamache
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. Rule 8 (a) (2).  Measured against this threshold requirement, the Municipality's motion to dismiss should be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Municipality of Anchorage correctly outlines the rule and standard to be applied to motions for dismiss for failure to state a cause of action. Fed. R. Civ. P. Rule 12 (b) (6). "All allegations of material fact made in the complaint must be accepted as true, and must be construed in the light most favorable to the plaintiff." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F. 3d 920, 931 (9th Cir. 2003).  The court must look not only at the text of the allegations, but must also consider all reasonable inferences drawn from the allegations. *Gompper v. VISX, Inc.*, 298 F. 3d 893, 897 (9th Cir. 2002).

## INVERSE CONDEMNATION

Plaintiffs' First Cause of Action alleges Inverse Condemnation.  *See* Complaint, p. 5, paragraphs 22 – 27.  The Municipality's motion to dismiss provides a helpful analysis of condemnation law. However, it appears to be a more of a motion for summary judgment than a Civil Rule 12 (b) (6), asking the court for a dismissal on the merits.  In this opposition, the plaintiffs will not seek to identify undecided genuine issues of fact which would preclude summary judgment.  Therefore, although the motion and opposition address the merits of the claim, the court's focus should remain on the threshold question of whether the complaint, in the light most favorable to plaintiffs, alleges a condemnation claim upon which relief can be granted.

Because of the Municipality's obvious expertise in condemnation law, the plaintiffs accept generally the statements of law.  Where the plaintiffs disagree is in the application of the law to the facts of this case, and on the need for a dismissal of the claim. The

Law Office of Peter C. Gamache
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

OPPOSSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                             Page 2 of 12

plaintiffs agree that the claim alleged is not a traditional taking, as through eminent domain, but a regulatory taking. Government actions become takings under principles of inverse condemnation when a private land owner is forced to bear an unreasonable burden as a result of the government's exercise of power in the public interest. *Anchorage v. Sandberg*, 861 P. 2d 554, 558 (Alaska 1993).

The plaintiffs' concede that they do not allege a taking *per se*, such that the plaintiffs have been deprived of all economically beneficial use of the property. The court must therefore engage in a case specific determination of the taking alleged in this case. *Spinell Homes, Inc. v. Municipality of Anchorage*, 78 P. 3d 692, 702 (Alaska 2003). However, the Municipality's analysis is the wrong one in that it does not apply to the facts presented in this case. Perhaps this conclusion can be illustrated by points exposing the dichotomy between the defendant's legal analysis and what actually happened in this instance.

1. "<u>The Municipality has a right to protect the public form safety hazards</u>" Defendant's motion, page 8. This assertion is not disputed, but, as seen below, endorsed.

2. <u>The Municipality's building and fire code has an economic impact on all landowners, and the plaintiffs are part of this class and are not the sole bearers of this burden.</u> Defendant's motion, page 7. The plaintiffs are not complaining of the cost of fire and safety upgrades. They want a safe and secure building, and are not averse to paying for these improvements. Their complaint is that the cost which they paid to purchase the property did not reflect its true market value. The subsequent cost of fire, safety and land use upgrades performed is simply the measure of damages between what the plaintiffs paid for the property versus what any purchaser would have paid but for the Municipality's issuance of a grossly misleading certificate of occupancy.

3. <u>The claim for inverse condemnation is not ripe because the plaintiffs have not appealed, and the Municipality has not had the opportunity to decide and explain the challenged regulation.</u> Defendant's motion, pages 4 and 5. The plaintiffs were not

**Law Office of Peter C. Gamache**
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

OPPOSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                                     Page 3 of 12

damaged by the legitimate use of the Municipality regulatory authority. What caused the plaintiffs injury, in their view, was the issuance of an allegedly false unconditional certificate of occupancy. There was nothing to appeal. It was favorable to plaintiffs and therefore welcomed. Despite the contemporaneous fire code inspection on May 22, 2004, the plaintiffs were lulled by the certificate into believing that the code violations noted were manageable and financially feasible given the assurances of defendants Comer and RE/MAX. Complaint, p. 4, paragraph 19. It was not until March 16, 2005 that the plaintiffs discovered and appreciated the extent to which the allegedly false certificate had unfairly misled them. Complaint, p. 4, paragraph 21.

    4. <u>There is no protected property interest in a certificate of occupancy</u>. Defendant's motion, pages 9 and 10. Citing *Spinell*, the Municipality argues that because there was no mandatory duty to issue a certificate of occupancy, it was not possible for plaintiff to establish a protected property interest in it. *Spinell* 78 P.3d at 701. This argument is the reverse of what in fact occurred. Not having a mandatory duty to issue the certificate, the Municipality nonetheless did so on May 22, 2003. Given that the issuing official knew of then existing fires and safety violations, the Municipality had an equal and opposite duty NOT to issue the certificate, a duty which it violated. Once issued, the certificate became a protected property interest, and one on which the plaintiffs unwittingly placed great value.

    The correct legal analysis comes out in a comparison of the facts in this case to those in *Spinell v. Anchorage*. Uniform Administrative Code 309.3, regarding certificates of occupancy, states in part:

> After the building official inspects the building or structure and finds no violations of the provisions of this code or other laws which are enforced by the code enforcement agency, the building official shall issue a Certificate of Occupancy."

The plaintiff in Spinell, focusing on the "shall" language, argued that this code provision required the Municipality to issue a certificate of occupancy whenever an applicant met

Law Office of Peter C. Gamache
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

OPPOSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                                     Page 4 of 12

minimal standards.  The Municipality responded, based on the same provision, that this was untrue.  The court reasoned that under UAC 309.3, the Municipality is not required to issue a certificate of occupancy if there are any relevant code violations.  "**A final certificate of occupancy is essentially a guarantee to third parties that the building official inspected the completed project and found no violations of any ordinance, plat note, or building or zoning code."** *Spinell* 78 P.3d at 701. (footnote omitted) [Emphasis added]   The Municipality in this instance regarding the hotel should have issued a temporary or conditional certificate of occupancy.  Knowing that numerous fire and safety code violations existed on May 22, 2004, the Municipality was precluded – as a matter of law – from issuing as it did a false and misleading certificate of occupancy. But once it was issued, the **plaintiffs received what was essentially guarantee** that a building official had inspected the building and found no material code violations.

The Municipality's actions in this instance effected an unconstitutional taking because issuing a false Certificate of Occupancy did not advance a legitimate governmental interest.  The correct legal analysis, using the case-specific *Sandberg* factors used by the Alaska Supreme court is as follows:

1. The character of the government's action.  In this instance the Municipality's action was knowingly and materially false, prejudicially misleading, and contrary to law and the Municipality's own regulations.

2. Its economic impact.  The Municipality's issuance of a false certificate of occupancy had no economic impact on the public at large.  Such impact affected adversely only the plaintiffs.  The measure of that impact is roughly the cost to plaintiffs or all of the subsequent code driven repairs, or the difference between the hotel's fair market value at the time of sale with a valid certificate versus its fair market value without one.

3. Its interference with reasonable investment backed expectations.  Again, the issuance of the certificate, coupled with the assurances of repairs made by defendant Comer on behalf of defendant RE/MAX, induced the plaintiffs not to rescind their

**Law Office of Peter C. Gamache**
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

OPPOSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                                    Page 5 of 12

purchase of the hotel. Had they known at that time what the Municipal officials knew regarding the hotel's true condition, they would have known that, despite defendant Comer's assurances, the hotel was not a reasonable, financially viable investment.

4. <u>The legitimacy of the interest advanced by the regulation or land use decision</u>. The plaintiffs agree that the fire and safety codes advance a vital and legitimate public interest. But as to plaintiffs, the Municipality violated their rights and interests by unfairly depriving them of a substantial potion of the value of their property through a regulatory violation of the law.

For these reasons, the complaint states a claim for inverse condemnation upon which relief can be granted. The Municipality's actions became a taking under principles of inverse condemnation when a private land owner was forced to bear an unreasonable burden as a result of the government's unlawful exercise of power as being in the public interest. See *Anchorage v. Sandberg*, 861 P. 2d 554, 558 (Alaska 1993).

<u>DUE PROCESS (42 USC § 1983)</u>

Plaintiffs' Second Cause of Action alleges a violation of 42 USC § 1983. *See* Complaint, p. 6, paragraphs 28 – 29. The Municipality's motion to dismiss raises as a defense the two- year Alaska statute of limitations. AS 09.10.70. However, a proper Civil Rule 12(b)(6) motion is not about the adequacy of a defense, but rather about the adequacy of the claims. Using this standard, the motion as to the due process allegations must be denied.

As for the two-year statute of limitations, the Second Cause of Action incorporates by reference "all of the preceding paragraphs and allegations in this complaint." Complaint, p. 6, paragraph 28. Those prior allegations include paragraph 21, which alleges:

> 21. On or about March 16, 2005, the Municipal Building Safety Division issued an eight (8) page report on the hotel's existing code, building, and safety violations. The most serious and expensive of these violations involve

**Law Office of Peter C. Gamache**
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

OPPOSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                                               Page 6 of 12

>
> the hotel's fire alarm and sprinkler system, violations which existed prior to the plaintiffs' purchase of the hotel in 2003, and which were known to the defendants but concealed from the plaintiffs.

When this allegation is read in the light most favorable to plaintiffs, one may reasonably conclude that the harm and costs to the defendant's livelihoods and their substantial financial investment, induced as it was by the allegedly false Certificate of Occupancy of May 22, 2003, continued at least until March 16, 2005.

The Complaint, p. 6, paragraph 29 alleges:

> 29. The issuance of the fraudulent Certificate of Occupancy **coupled with the Municipality's numerous subsequent citations and threats of hotel closure** amounts to arbitrary and capricious conduct harmful and discriminatory to plaintiffs in violation of their due process rights under the Fourteenth Amendment to the United States Constitution and the Alaska Constitution, and in violation of 42 USC § 1983. [Emphasis added.]

The allegations in paragraphs 21 and 29 must be read together, in the light most favorable to the plaintiffs, and considering all reasonable inferences. *Gompper,* 298 F. 3d at 897. Applying this standard, the date on which the two-year statute of limitations began to run was not limited to May 22, 2003, the date on which the Municipality issued its allegedly false Certificate of Occupancy. The Municipality's due process which began with the Certificate continued through "numerous subsequent citations and threats of hotel closure", including the March 16, 2005 Municipal Building Safety Division's eight (8) page report on the hotel's then existing code, building, and safety violations. *See* Complaint, paragraphs 21 and 29. The injuries to plaintiffs from alleged due process violations accrued not from a single blow, as in a physical injury, but in a series of municipal injuries which continue through the present day.

Because the complaint was filed on November 23, 2005, this claim falls within the two-year statute of limitations period for Alaska torts claims. The reason for this is that the statute of limitations as to torts does not usually begin to run until the tort is complete.

**Law Office of Peter C. Gamache**
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

OPPOSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                                              Page 7 of 12

*Austin v. Fulton Insurance Co.*, 444 P. 2d 536 (Alaska 1968)[citing Restatement of Torts §899 comment c at 525 (1939)]

### SCHEME TO DEFRAUD

Plaintiffs" Third Cause of Action alleges a Scheme to Defraud. *See* Complaint, p. 6, paragraphs 30-34. In essence of defendant Municipality's motion is one for a more definite statement under Civil Rule 12 (e) to better prepare their defense; and to this proposition the plaintiffs do not object. However a dismissal for failure to state a claim is not warranted. Taken as a whole, the complaint alleges with sufficient particularity as to time, place, persons and means a scheme to defraud for which the plaintiffs are entitled to relief.

Defendant Municipality is correct in asserting that under Civil Rule 9(b) allegations of fraud must be pled with particularity, but only as to the circumstances constituting the alleged fraud. "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. Rule 9 (b).

In cases of corporate or governmental fraud, a plaintiff cannot be expected to have personal knowledge of the details of the defendants' internal affairs. *In re Craftmatic Sec. Litig. v. Kraftsow*, 890 F. ed 628, 645 (3d Cir. 1989). It is reasonable to assume that misleading information was a collective action by their officers. The particularity requirements of Civil Rule 9 (b) are met by pleading the misrepresentations and where possible the roles of the individuals defendants. *In re GlenFed, Inc. Sec. Litig.*, 60 F. 3d 591 (9th Cir. 1995).

Fraud can be committed, even without a fiduciary duty, by half truths or by statements omitting material facts. *Carter v. Hoblit*, 755 P. 2nd 1084 (Alaska 1988). Material misstatements are actionable when they apply to financial or commercial interests. *P.G. v. State Dept. Health and Youth Services*, 4 P. 3d 326 (Alaska 2000). See *Yoon v. Alaska Real Estate Commissio*n, 17 P. 3d 779 (Alaska 2001) (Elements of

Law Office of Peter C. Gamache
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

OPPOSSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                                   Page 8 of 12

promissory fraud are: (1) a promise, (2) knowledge that the promise is false or intent not to honor it, (3) the intention to induce reliance, (4) justifiable reliance, and damages.)

From the allegations in the complaint, one may derive a scheme to defraud the plaintiffs.

1. On or about April 19, 2003 the plaintiffs signed an agreement to purchase an operational and profitable hotel for $755,000.00. [Complaint, paragraph 6]

2. On or about April 20, 2003, plaintiff Stahlman requested from the Municipality, in writing, all information relevant to the purchase of the hotel. [Complaint, paragraph 7]

3. Defendant Comer, as agent for defendant RE/Max made representations to plaintiff Stahlman as to the hotel's condition and the suitability of the premises as a hotel. [Complaint, paragraph 10]

4. Between April 30 and May 1, 2003, the purchase of the hotel was completed. [Complaint, paragraphs 12 and 13]

5. Also on or about May 1, 2003, The municipality's Land Enforcement Officer, Teresa E. Dietz, responded to plaintiff's request for information on the property, and correctly informed him that the property had an open (i.e. unresolved) permit, and that it lacked a Certificate of Occupancy to operate as a hotel. [Complaint, paragraph 14]

6. Also on or about May 1, 2003, plaintiff Stahlman demanded a rescission of the sale a return of his money. [Complaint, paragraph 15]

7. Defendant Comer responded by committing defendant RE/MAX to perform the remedial work needed and to obtain a certificate of Occupancy for the property as a Hotel. [Complaint, paragraph 16]

8. On or about May 20, 2003, Municipal Fire Inspector Cleo Hill indicated to defendant Comer that the Municipality would issue the needed Certificate, but that unresolved alarm/sprinkler/safety issues would not be indicated on it. [Complaint, paragraph 17]

Law Office of Peter C. Gamache
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

OPPOSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                     Page 9 of 12

9. On or about May 22, the Municipality issued an unconditional Certificate of Occupancy, which certificate on its face was materially misleading and untrue. [Complaint, paragraph 18]

10. Later the same day, and contrary to the Municipality's own Certificate, the Municipal Fire Dept. inspected the premises, and found no fewer than 38 code violations. [Complaint, paragraph 19]

Based on these particularized allegations, the plaintiffs' Third Cause of Action alleging fraud meets the requirements of Civil Rule 9 (b).

<u>INFLICTION OF EMOTIONAL DISTRESS</u>

Plaintiffs' Seventh Cause of Action alleges Infliction of Emotional Distress. *See* Complaint, pp. 8-9, paragraphs 46-49. However, this is not a cause of action directed at defendant Municipality, but rather against defendants RE/MAX Properties, Inc and Randy D. Comer. A review of the complaint's "Prayer for Relief" discloses that the plaintiffs seek damages against the defendant Municipality on the First, Second and Third Causes of Action; and against the defendants RE/MAX and Comer on the Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action.

Be that as it may, the Municipality's motion to dismiss raises as a defense the two-year Alaska statute of limitations. AS 09.10.70. However, a proper Civil Rule 12(b)(6) motion is not about the adequacy of a defense, but rather about the adequacy of the claims. Using this standard, the motion as applied to all defendants must be denied.

Infliction of Emotional Distress is recognized under Alaska law as a valid claim upon which relief can be granted, even where there is no physical injury. *Wilson v. United States*, 190 F. 3d 959 (C.A. 9, Alaska, 1999.) (If a defendant stands in a contractual or fiduciary relationship with the plaintiff and the nature of the relationship imposes on the defendant a duty to refrain from conduct that would foreseeably result in emotional harm to the plaintiff, the plaintiff need not establish physical harm to recover for negligent

OPPOSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                                       Page 10 of 12

infliction of emotional distress.)  Defendants RE/MAX and Comer had a contractual relationship with plaintiffs, thus imposing on them a duty to refrain form conduct foreseeably resulting in emotional harm.  The allegations in the complaint, when read in the light most favorable to plaintiff, allege a breach of this duty. The allegations, if proven at trial, will entitle the plaintiffs to be granted the damages they seek.  Therefore, this claim cannot be dismissed on the basis of Civil Rule 12(b)(6).

As for the two-year statute of limitations, the Seventh Cause of Action incorporates by reference "all of the preceding paragraphs and allegations in this complaint." Complaint, p. 8, paragraph 46.  Those prior allegations include paragraph 21, which alleges:

> 21. On or about March 16, 2005, the Municipal Building Safety Division issued an eight (8) page report on the hotel's existing code, building, and safety violations. The most serious and expensive of these violations involve the hotel's fire alarm and sprinkler system, violations which existed prior to the plaintiffs' purchase of the hotel in 2003, and which were known to the defendants but concealed from the plaintiffs.

Therefore, the plaintiffs' argument above regarding the Due Process claim, and when the two-year statute of limitations began to run, applies equally to this claim.  The tort was not complete on May 22, 2003, but continued at least until March 16, 2005.

## CONCLUSION

Civil Rule 8(a) (2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  It does not require a recitation of all the available evidence.  For this reason, the burden on a defendant for dismissing claims under Civil Rule 12(b) (6) for failure to state a claim is very high.  As to the claims above discussed, defendant Municipality of Anchorage has not met this high burden, and the motion to dismiss must be denied in its entirety.

**Law Office of Peter C. Gamache**
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

OPPOSSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                                                                        Page 11 of 12

Dated at Anchorage, Alaska this 7TH day of April, 2006

s/ Peter C. Gamache
Law office of Peter C. Gamache
405 W. 36th Avenue, Suite 201
Anchorage, Alaska 99503
(907) 563-6969
FAX (907) 563-5983
Email: peter_gamache@yahoo.com
Alaska Bar No. 8211116

**Certificate of Service**

The undersigned certifies that on April 7, 2006
a true and correct copy of the Plaintiffs' Opposition
to Motion To Dismiss and Order were served
electronically through the ECG system on:

- Mark Sandberg

-Joshua Freeman

/s/ Peter C. Gamache

**Law Office of Peter C. Gamache**
405 W. 36th AVENUE, SUITE 201
ANCHORAGE, ALASKA 99503-5872
(907) 563-6969

OPPOSSITION TO MOTION TO DISMISS
Stahlman, et al. v. MOA, et al
Case No. 3:05-cv-00298-TMB                                    Page 12 of 12